# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

PATRICIA ANN MITCHELL,                    )
                                          )
            Plaintiff,                    )       Case No. 3:13-CV-00270-CL
                                          )
    v.                                    )       **REPORT AND RECOMMENDATION**
                                          )
CAROLYN L. COLVIN,                        )
Commissioner of Social Security,          )
                                          )
            Defendant.                    )
_____  )

Lisa Porter, 16200 S.W. Pacific Highway, Suite H-280, Portland, OR 97224.  Attorney for
Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue,
Suite 600, Portland, OR 97204-2902; Jordan D. Goddard, Special Assistant United States
Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue,
Suite 2900 M/S 221A, Seattle, WA 98104-7075.  Attorneys for Defendant.


**MARK D. CLARKE, Magistrate Judge**.

       Plaintiff Patricia Mitchell ("plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under

Titles II and XVI of the Social Security Act.  This court has jurisdiction under 42 U.S.C. §§

405(g) and 1383(c).  Because the Commissioner's decision is supported by substantial evidence,

the decision should be AFFIRMED.

## BACKGROUND

Born in 1962, plaintiff was 37 years old on the alleged disability onset date of September 30, 1999. She was 49 years old at the date of the ALJ's decision. Tr. 146. Plaintiff speaks English and completed the tenth grade before earning her G.E.D. Tr. 45-46, 173. She has past work experience as a dietary aid and as a caregiver. Tr. 71.

Plaintiff filed applications for DIB and SSI in May, 2009, alleging disability due to degenerative disc disease, scoliosis, and type 2 diabetes. Tr. 18, 144-55, 169. The Commissioner denied plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 84-93, 94-100. After an administrative hearing the ALJ issued a decision finding plaintiff not to be disabled. Tr. 18-35. Plaintiff's subsequent request for review was denied by the Appeals Council, making the ALJ's decision the final Agency decision. Tr. 1-6; 20 C.F.R. §§ 416.1481, 422.210 (2012). Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
expected to result in death, an impairment is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
or must be expected to last for a continuous period of at least 12 months.
20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
416.920(a)(4)(iii). If the impairment does not meet or equal one or more
of the listed impairments, the analysis proceeds beyond step three. At that
point, the ALJ must evaluate medical and other relevant evidence to assess
and determine the claimant's "residual functional capacity" ("RFC"). This
is an assessment of work-related activities that the claimant may still
perform on a regular and continuing basis, despite any limitations imposed
by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,
the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
416.960(c). If the claimant cannot perform such work, he or she is
disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, she found that plaintiff had not engaged in substantial gainful activity after the alleged onset date. Tr. 20. At step two, the ALJ found plaintiff had the following severe impairments: degenerative disc disease, right shoulder degenerative joint disease, obesity, chronic pain, hip bursitis, asthma, diabetes mellitus, somatoform disorder, depression, and anxiety. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 21.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that plaintiff could perform less than the full range of work at the light exertion level; she found that plaintiff

Page 4 – REPORT AND RECOMMENDATION

can lift and carry twenty pounds occasionally and ten pounds frequently; she can stand and walk for two out of eight hours; she can sit for six out of eight hours; she can push/pull twenty pounds occasionally and ten pounds frequently; she can occasionally reach overhead bilaterally; she can occasionally climb, balance, stoop, kneel, crouch and crawl; she should avoid concentrated exposure to fumes, odors, dusts, gasses, and pulmonary irritants; and she is limited to performing simple, routine tasks in a routine work environment.

Tr. 23. At step four, the ALJ found plaintiff was unable to perform any of her past relevant work. Tr. 28. At step five, the ALJ found that plaintiff retains the RFC to perform jobs existing in significant numbers in the national economy, including small product assembly worker and cashier. Tr. 29. The ALJ therefore concluded that plaintiff is not disabled. Tr. 30.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## ANALYSIS

Plaintiff challenges the ALJ's decision, claiming that she erred by: (1) failing to develop the record with respect to her somatoform disorder, (2) improperly evaluating plaintiff's credibility, and (3) failing to incorporate her attendance and pace limitations into the RFC. The court finds that the ALJ's conclusions were supported by substantial evidence in the record and should therefore be affirmed.

### Somatoform Disorder

Plaintiff argues that the ALJ failed to develop the record with respect to plaintiff's somatoform disorder and possible passive aggressive disorder. The ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011). The ALJ is not, however, required to obtain evidence to disprove a claimant's allegations. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (noting claimant bears the burden of proving disability and rejecting the argument that medical sources should be recontacted before their opinions are rejected); *McCoy v. Astrue,* 648 F.3d 605, 612 (8th Cir. 2011) ("an ALJ is not required to disprove every possible impairment").

At step two the ALJ adjudged plaintiff's somatoform disorder to be severe. Tr. 20. In evaluating the impact of plaintiff's somatoform disorder on her ability to work, the ALJ considered the medical treatments notes of Nancy MacNeal, M.D., plaintiff's treating physician from 1999 through February, 2002. Tr. 422-529. Dr. MacNeal's treatment notes reveal that she

suspected plaintiff of feigning illness in order to avoid vocational rehabilitation classes and other appointments. Tr. 462. In May of 2001, Dr. MacNeal concluded that plaintiff's behavior was consistent with somatoform disorder and "passive aggressiveness." Tr. 454. In the nine months of treatment notes following this observation, Dr. MacNeal never again noted a diagnosis of somatoform disorder or passive aggressiveness. *See* Tr. 433-52. The subsequent decade of treatment produced no records indicating plaintiff suffers from somatoform or passive aggressiveness. Tr. 296-421, 868-932. Accordingly, neither Dr. MacNeal nor any other medical provider assessed specific functional limitations corresponding with somatoform disorder. On this record, it was reasonable for the ALJ to conclude that all of plaintiff's mental limitations were accounted for in her extensive treatment history; she was not required to develop the record further with respect to plaintiff's alleged somatoform disorder.

Plaintiff relies heavily on *Rask v. Astrue*, an unpublished decision from this District overturning an ALJ's decision based on his failure to properly develop the record regarding the claimant's somatoform disorder. 2011 WL 5546935, *14 (D. Or. 2011). In *Rask*, three examining doctors opined that the claimant suffered from a "psychogenic or somatization disorder," yet the ALJ failed to subpoena or otherwise question the doctors concerning that diagnosis. *Id.* Due to the nature of somatoform disorder, the court recognized that the claimant "may have avoided or disavowed the very examinations, consultations, and treatments that would have most fully supported her application." *Id.* at 15. The court thus found that the ALJ failed to develop the medical record regarding the claimant's mental health condition.

Plaintiff's situation is easily distinguished from that of the claimant in *Rask*. Here, only one physician indicated that plaintiff's behavior was consistent with somatoform disorder. Tr. 454. As noted, Dr. MacNeal declines to mention a possible somatoform diagnosis in any

subsequent treatment note.  Moreover, the record contains ten years' worth of medical treatment

notes subsequent to the singular mention of somatoform.  Not one of these treatment notes

mentions either somatoform or plaintiff's alleged passive aggressive tendencies.[1]  Thus, unlike

the claimant in *Rask*, plaintiff had the opportunity to undergo the examinations, consultations,

and treatments that could support an application for disability based on somatoform disorder.

The court therefore rejects plaintiff's argument.

  The ALJ properly considered the medical record and incorporated all identified

limitations associated with her somatoform disorder into the RFC.  *See Turner v. Comm'r*, 613

F.3d 1217, 1222-23 (9th Cir. 2010) (an ALJ is not required to credit limitations that a medical

source did not identify).  Because the ALJ reached a reasonable conclusion regarding plaintiff's

limitations based on the record, she was not required to develop the record further to rule out

alternative interpretations of the evidence.  *Batson v. Comm'r,* 359 F.3d 1190, 1193 (9th Cir.

2004) ("if evidence exists to support more than one rational interpretation [of the available

evidence], we must defer to the Commissioner' decision").  The ALJ's reading of the record is

rational, and should therefore be upheld.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989) (the ALJ's reasonable decision must be upheld even if the evidence "is susceptible to more

than one rational interpretation"); *see also Sample*, 694 F.2d at 642.

### Plaintiff's Credibility

  Plaintiff next argues that the ALJ failed to properly credit her subjective symptom

testimony.  The Ninth Circuit has developed a two-step process for evaluating the credibility of a

claimant's own testimony about the severity and limiting effect of the claimant's symptoms.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ "must determine whether

---

[1] It is also worth noting that Dr. MacNeal did not actually diagnose plaintiff with passive
aggressiveness.  *See Bray*, 554 F.3d at 1228 (the ALJ "need not accept the opinion of any physician ... if
that opinion is brief, conclusory, and inadequately supported by clinical findings").

the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).  When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).  It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, plaintiff testified that she could not work because she had problems with her legs and hands, difficulty concentrating and communicating with others, and an inability to stand for a significant amount of time. Tr. 46. She stated in her application that she is "in pain all the time." Tr. 169. Plaintiff testified that she was fired from her last job for improperly accepting money from an elderly client and because of physical problems with job performance. Tr. 48. She testified that she suffers from debilitating headaches brought on by stress and depression three to four times per week, as well as bilateral hip pain caused by trochanteric bursitis. Tr. 49-50. Plaintiff alleged that her left hand is always cold, that she frequently drops things with both hands, and that her left leg is "totally numb." Tr. 51, 169. She testified that she gets out of breath from walking one block, and can only climb four stairs before stopping to catch her breath. Tr. 53-54.

The ALJ provided clear and convincing reasons for rejecting plaintiff's testimony. First, the ALJ noted that plaintiff did not follow through with treatment referrals. Tr. 24. For

example, plaintiff was advised to lose weight, attend physical therapy, and increase her physical activity in order to treat her symptoms; the record reflects that plaintiff did not fully comply with those recommendations. *See* Tr. 390 (noting that plaintiff declined physical therapy), 421 (physical therapy "again offered and refused"). Further, plaintiff was referred to a pain specialist in 2001 but failed to attend multiple appointments. Tr. 453 (noting plaintiff "[n]eeds referral to a different pain clinic since she no-showed twice"), 454 (noting plaintiff "[n]eeds new pain consultant because she didn't bother to call and cancel her app[ointment]"). These observations—which plaintiff does not contest—license the ALJ's inference that plaintiff was not as limited as alleged in her testimony. *See Sample*, 694 F.2d at 642 (an ALJ may "draw inferences logically flowing from the evidence"). Plaintiff's failure to follow through with treatment referrals thus provides a clear and convincing reason for the ALJ's credibility finding.

Second, the ALJ noted plaintiff's drug-seeking behavior and multiple positive drug tests in the medical records. Tr. 28. For example, in October of 2008, plaintiff tested positive for marijuana and cocaine but tested negative for her prescribed opiate pain medication. Tr. 538-39. The ALJ reasonably inferred from the fact that plaintiff was abusing illegal drugs and not taking her prescribed medication that plaintiff was not as limited as she indicated in her testimony. *See Sample*, 694 F.2d at 642. This was an additional clear and convincing reason for assigning little weight to plaintiff's testimony.

Third, the ALJ found that plaintiff's infrequent treatment history weighed against her credibility. Tr. 27-28. Evidence of conservative treatment is sufficient to discount evidence regarding the severity of a claimant's impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ noted that despite plaintiff's reports of hip pain, her medical providers recommended conservative treatment of stretching and wearing supportive shoes. Tr. 24.

Further, plaintiff went three years without seeking any treatment for hip pain after receiving a steroid injection in her right hip. Tr. 305-07. Plaintiff's record of infrequent, conservative treatment for her hip pain was a clear and convincing reason for rejecting her subjective symptom testimony regarding her level of debilitating pain. *Parra*, 481 F.3d at 751.

Fourth, the ALJ noted that plaintiff's level of activity contradicted her testimony about the severity of her limitations. Tr. 27-28. An ALJ may discredit a claimant's testimony based on their participation in everyday activities indicating capacities that are transferable to a work setting. *Molina v. Astrue,* 674 F.3d 1104, 1112-13 (9th Cir. 2012). For example, plaintiff was able to care for her sister and her elderly mother without assistance. Tr. 853; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (it is reasonable for an ALJ to infer that claimant's caregiving activities are inconsistent with allegations of debilitating limitations). To the extent that plaintiff's caregiving activities contradict her testimony, they provide additional weight to the ALJ's credibility finding.

On this record, the ALJ provided legally sufficient reasons for finding plaintiff not entirely credible. Although plaintiff contests additional reasons stated by the ALJ, any further error in the ALJ's reasoning is immaterial. *Carmickle*, 533 F.3d at 1162. The ALJ's credibility finding should be affirmed.

**Deficiencies in Attendance and Pace**

Plaintiff argues, finally, that the ALJ erred by failing to incorporate her attendance and pace limitations into the RFC. As noted, the RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c).

In her RFC assessment, the ALJ limited plaintiff to "performing simple, routine tasks in a routine work environment." Tr. 23. That finding is supported by substantial evidence, and incorporates the credible limitations on attendance and pace contained in the record. While plaintiff repeatedly states that the ALJ did not consider all relevant evidence when reaching this determination, she does not point to any specific, credible evidence in the record that contradicts the ALJ's assessment. *See Bayliss*, 427 F.3d at 1217 (the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary"). Moreover, insofar as plaintiff presents an alternative interpretation of the evidence cited by the ALJ in formulating plaintiff's RFC, that interpretation is insignificant because the Commissioner provided a rational reading of the record. *See Burch*, 400 F.3d at 679 (this court may not substitute its judgment for that of the Commissioner when the ALJ's decision is based on a rational interpretation of the evidence).

In her Reply Brief, plaintiff asks the court to follow *Brink v. Comm'r*, an unpublished decision holding that an RFC limiting a claimant to "simple" work does not fully account for deficiencies in concentration, persistence, or pace. 343 Fed.Appx. 211 (9th Cir. 2009). The *Brink* court reasoned that even "simple, repetitive work" might require "extensive focus or speed" and would thus be inappropriate for a claimant who suffered from moderate to marked deficits in attention and concentration. *Id.* at 212. Here, the ALJ determined based on the record that plaintiff has "moderate difficulties" in concentration, persistence or pace. Tr. 22. Plaintiff thus argues that the RFC, which limits plaintiff to simple and routine tasks, does not properly account for plaintiff's limitations.

The Ninth Circuit has repeatedly stated in its published decisions, however, that an ALJ's finding of moderate deficiencies in concentration, persistence, or pace need not translate into any specific limitations in the RFC. In *Hoopai v. Astrue*, for example, the court found that the claimant's depression did not significantly affect his ability to work, even though it resulted in moderate limitations in functional abilities, including attention and concentration. 499 F.3d 1071, 1076 (9th Cir. 2007). In *Stubbs-Danielson v. Astrue*, the claimant was found to be "moderately limited in her ability to perform at a consistent pace," yet the Ninth Circuit held that the ALJ properly incorporated that limitation by restricting her to "simple tasks." 539 F.3d 1169, 1174 (9th Cir. 2008). Here, the RFC limiting plaintiff to simple and routine tasks was consistent with the evidence and relevant Ninth Circuit law, and plaintiff has not identified any specific, concrete limitation in pace or attendance established by a credible source that was not incorporated into the RFC. Accordingly, the ALJ did not err in her RFC assessment, and her decision should be affirmed.

## RECOMMENDATION

The ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence and should therefore be AFFIRMED.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. **Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days from today's date. If objections are filed, any response is due fourteen (14) days from the date of the objections.** *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within

the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of December, 2013.

_____
Mark D. Clarke

United States Magistrate Judge